Gloria Smalls JONES, on behalf of her infant daughter, MICHELE; Eleanor Simmons, on behalf of her infant daughter, Sonya; Norma Garcia, on Behalf of her infant daughter, Marilisa Pilalo; Lourdes R. Guanlao, on Behalf of her infant daughter, Mary; Yvonne Mino, on Behalf of her infant daughter, Virginia; Christina Snow, on Behalf of her infant daughter, Tishoma Snow Watson, Plaintiffs,

v.

The BOARD OF EDUCATION OF the CITY SCHOOL DISTRICT OF the CITY OF NEW YORK; James F. Regan, as President of the Board of Education of the City School District of the City of New York; Miguel Martinez, as Vice President of the Board of Education of the City School District of the City of New York; Joseph G. Barkan, Stephen R. Franse, Ilene Impellizzeri, Robert F. Wagner, Jr., and Marjorie Lewis as members of the Board of Education of the City School District of the City of New York; and Nathan Quinones, as Chancellor of the City School District of the City of New York, Defendants.

No. 85 CV 4504.

United States District Court, E.D. New York.

April 11, 1986.

Virginia A. Pruitt, Susan A. Pashman, Brooklyn, N.Y., for plaintiffs.

James R. Sandner, United Federation of Teachers (Stephen Mendelsohn, New York City, of counsel), for amicus curiae.

Frederick A.O. Schwarz, Jr., New York City Corp. Counsel (Caryn M. Hirshleifer, Bonnie Mussman, New York City, of counsel), for defendants.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

This is a dispute between parents and education officials over the fate of a school.

Plaintiffs bring this action under 20 U.S.C. §§ 1681 *et seq.* ("Title IX"), 42 U.S.C. § 2000e–2(a)(2) ("Title VII"), and 42 U.S.C. § 1983. They seek to enjoin defendants from converting the all-female Washington Irving High School ("W.I.H.S.") into a coeducational institution. Defendants have moved for summary judgment dismissing the complaint. Fed.R.Civ.P. 56(b). For the reasons stated below, the motion is granted.

### Facts

Plaintiffs are parents of students currently enrolled at W.I.H.S.[1], an all-girls public high school located in New York City. Defendants—the New York City Board of Education (the "Board"), Schools Chancellor Nathan Quinones, and officers and members of the Board—plan to convert W.I.H.S. to a coeducational school at the end of the current term. The following facts are not in dispute.

W.I.H.S. is the last remaining single-sex high school in the New York City public school system. It is open to girls from all five boroughs and has no entrance requirements. Over ninety percent of its students are from low-income families. Its drop-out rate is 11.7%—dramatically below the city-wide rate of 38.4%—and between eighty-five and ninety percent of its students go on to post-secondary education.

The Title IX Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.*, prohibit educational programs receiving federal funds from discriminating on the basis of sex. While the statute does not generally apply to high schools, it is applicable to "institutions of vocational education …"[2]

The New York State Education Department Occupational Education Civil Rights

---

1. Plaintiffs have moved for class certification, Fed.R.Civ.P. 23, but have agreed to hold that motion in abeyance pending decision on the instant motion for summary judgment.

2. 20 U.S.C. § 1681 provides, in relevant part:
 (a) No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance, except that:
 (1) in regard to admissions to educational institutions, this section shall apply only to institutions of vocational education, professional education, and graduate higher education, and to public institutions of undergraduate higher education.

Coordinating Unit (the "S.E.D.") is charged with ensuring that local school boards comply with their obligations under Title IX. The S.E.D. applies its own Standards Governing Civil Rights in Vocational Education Programs ("Standards") and the Guidelines established by the United States Office of Civil Rights and now published by the Department of Education ("O.C.R. Guidelines").

During April and May 1983 the S.E.D. conducted an on-site review of several City high schools, including W.I.H.S. On July 11, 1984, Chancellor Quinones was informed of the preliminary findings of the S.E.D. It noted that, although W.I.H.S. was listed as an academic/comprehensive high school in the New York City Directory of High Schools, the school offered at least five programs of occupational/vocational training. And therein lay the rub: under the Standards and the O.C.R. Guidelines, the S.E.D. concluded, W.I.H.S. was an "institution of vocational education," 20 U.S.C. § 1681(a)(1), within the meaning of Title IX.

If this characterization was accurate, of course, W.I.H.S. was subject to the prohibitions of the statute, and could no longer be maintained as a girls-only high school. On December 10, 1984, the Chancellor responded. He indicated that the Board agreed with the S.E.D. that W.I.H.S. was an institution of vocational education under the O.C.R. Guidelines. Accordingly, he added, "plans are being developed for the phasing out of the maintenance of [W.I.H.S.] as a single-sex high school" (Schonhaut Affidavit Exh. D at 2).

On February 19, 1985, the S.E.D. issued its final findings, formally directing the Board to rectify the situation. At a public meeting on April 24, 1985, Deputy Chancellor Charles I. Schonhaut announced the Board's position and explained that a plan of coeducational education better accorded with the Chancellor's policy that no student should be denied access to a public school on the basis of sex. That policy, according to Mr. Schonhaut, rests in part on the belief that a coeducational school is a better educational environment because it reflects the society in which students will eventually have to live. The policy also furthers the Board's goal of eradicating sexual stereotypes.

By letter dated June 5, 1985, Mr. Schonhaut informed the principal of W.I.H.S. that the school would become coeducational by September 1986. On August 30, 1985, the Board issued its Title IX Voluntary Compliance Plan # 2 ("V.C.P."), in which it outlined its plan for the coeducation of W.I.H.S. It is currently in the process of updating the V.C.P.

Recruitment of boys and girls for fall 1986 admission to W.I.H.S. began in October 1985. Certain building modifications—such as boys' bathrooms and locker rooms—are needed, and construction will begin in May 1986. Boys will be admitted to the ninth and tenth grades in September 1986.

On January 31, 1986, this Court heard argument on plaintiffs' motion for preliminary relief enjoining the implementation of the coeducation plan. That motion was denied on the ground that no irreparable harm was shown. A briefing schedule on defendants' motion for summary judgment was set, and because changes at W.I.H.S. are due to take place soon, the Court agreed to decide the motion on an expedited basis.

### Discussion

Plaintiffs have submitted a Niagara of material to document the educational benefits of attendance at an all-girls school. Their legal arguments, on the other hand, are perfunctory and conclusory. I discern three theories which they suggest entitle them to an injunction maintaining W.I.H.S. as an all-girls high school.

### I. *Title IX*

Defendants have determined that W.I.H.S. is an "institution of vocational education" covered by Title IX. Consequently, the failure to open the school to students of both sexes would, in their judgment, be a violation of the statute. This might result

in a cut-off of federal funds to the New York City school system. *See* 20 U.S.C. § 1682.

Plaintiffs disagree that W.I.H.S. is a covered institution, and even if it were, they argue that Title IX would not require coeducation. Although Title IX states that no person shall be denied participation in an education program on the basis of sex, 20 U.S.C. § 1681(a), plaintiffs contend that the "intent" of that statute would be better served by keeping W.I.H.S. closed to boys. The parties have spilled a lot of ink probing these interesting matters, but they are largely irrelevant to the controlling legal question.

 The issue is not whether W.I.H.S. is an institution covered by Title IX, nor is it whether Title IX mandates the coeducation of W.I.H.S. Rather, the issue is whether Title IX prohibits coeducation. Clearly it does no such thing. Title IX forbids discrimination. For plaintiffs to argue that it forbids coeducational schools turns the statute on its head.

It is irrelevant whether the Board is right in its view that it has to convert W.I.H.S. to comply with Title IX. Even if the Board's decision to sexually integrate the school were based solely on its belief that coeducational schools better prepare students to function in society, the legal issue would still be simply whether conversion infringes any *right* of the plaintiffs, thereby giving them access to an injunction.[3] No such right can be anchored in Title IX.

Plaintiffs argue that because single-sex schools provide an environment in which girls are more likely to succeed academically, coeducation contravenes the "intent" of Title IX as a remedial statute. This contention flies in the teeth of the statute itself:

> Nothing contained in subsection (a) of this section shall be interpreted to require any educational institution to grant preferential or disparate treatment to the members of one sex on account of an imbalance which may exist with respect to the total number or percentage of persons of that sex participating in or receiving the benefits of any federally supported program or activity, in comparison with the total number or percentage of persons of that sex in any community, State, section or other area.

20 U.S.C. § 1681(b). If the drafters of Title IX believed that educational institutions should not be required to give preferential treatment to one sex even where past imbalances have been demonstrated, surely they did not intend the statute to mandate that a school district provide a special program for one sex where no such showing has been made.

In enacting Title IX, Congress sought to avoid the use of federal resources to support discriminatory practices, and to provide individual citizens effective protection against such practices. *Cannon v. University of Chicago*, 441 U.S. 677, 704, 99 S.Ct. 1946, 1961, 60 L.Ed.2d 560 (1979). Plaintiffs have not explained how the establishment of a coeducational school system can be regarded as a discriminatory practice. They have argued that a coeducational system is an *unwise* educational practice; but that, of course, does not make it the kind of school board decision-making that Title IX was designed to redress. Neither have they suggested any meretricious motive on the part of defendants.[4] Thus, nothing in Title IX establishes

---

**3.** Accordingly, plaintiffs are incorrect that the Title IX theory raises a factual issue for trial. Whether W.I.H.S. is an "institution of vocational education" within the meaning of Title IX (even assuming this to be a factual question) is irrelevant and does not prevent the granting of summary judgment.

**4.** There is no factual dispute as to the Board's reasons for its decision to sexually integrate W.I.H.S. Local Rule 3(g) requires the party moving for summary judgment to submit a statement of the material facts as to which there is no genuine issue to be tried. Defendants have done so. The Rule also provides that the facts set forth in that statement will be deemed admitted unless controverted by a statement of the material facts as to which the opposing party contends there is an issue to be tried. Plaintiffs have submitted no such statement. Accordingly, defendants' statement that the

either their right to send their daughters to an all-girls school or their entitlement to an injunction against the conversion of W.I. H.S. that such a right would engender.

## II. *Section 1983/Fourteenth Amendment*

### A. *Due Process*

■ The second theory urged by plaintiffs, and the United Federation of Teachers as *amicus curiae*, is that conversion of W.I.H.S. to a coeducational school would deprive the female students of a property right without due process of law in violation of 42 U.S.C. § 1983 and the fourteenth amendment.

The Supreme Court in *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), held that property interests derive from state law. Article XI, Section 1 of New York's Constitution declares that the State shall provide children with a free public education, and this admittedly establishes an entitlement to such an education. *Mitchell v. Board of Educ.,* 67 A.D.2d 284, 288, 414 N.Y.S. 923, 926 (2d Dep't 1979); *see Goss v. Lopez,* 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975). The property interest thus created " 'must be made available to all on equal terms,' " *Johnpoll v. Elias,* 513 F.Supp. 430, 431 (E.D.N.Y.1980) (quoting *Brown v. Board of Educ.,* 347 U.S. 483, 493, 74 S.Ct. 686, 691, 98 L.Ed. 873 (1953) ), and cannot be denied without due process of law, *id.* (citing *Goss v. Lopez, supra,* 419 U.S. at 574, 95 S.Ct. at 736).

Conceding that plaintiffs have a property interest in public education, defendants maintain that converting W.I.H.S. to a coeducational school in no way infringes that interest. The students will still have untrammeled access to a free education in the New York City public schools. It is true

> Board's action was predicated on the S.E.D. directive and the Chancellor's educational policy is deemed admitted. Moreover, nothing in plaintiffs' briefs or affidavits provides any factual support for the conclusory allegation that defendants, in deciding to convert W.I.H.S., intended to discriminate or to deprive the students of any educational benefit to which they are entitled.

that they will no longer have the opportunity to receive that education in a certain setting—an all-girls school—but they can point to no state law or other source giving them a property right to receive their free public education in a particular environment.

That plaintiffs are "not being permitted to attend the school of [their] choice is not tantamount to a denial of a right to an education." *Id.* 513 F.Supp. at 431–32. That the plaintiffs regard education in an all-female school does not rise to the level of a constitutional violation. *See id.* Accordingly, because plaintiffs possess no entitlement to education at an all-girls school, conversion of W.I.H.S. to a coeducational school deprives them of no property interest and triggers no due process rights.

### B. *Equal Protection*

Plaintiffs state that the conversion of W.I.H.S. violates the equal protection clause. It is unclear, however, whether they are arguing 1) that the failure to create a separate institution for girls denies their right to an education; or 2) that the Board's action in desegregating W.I. H.S. disadvantages a group that is a suspect class. Neither contention has merit.

### 1. *Right to Education*

■ Education, although an interest of unquestioned importance, *see Plyler v. Doe,* 457 U.S. 202, 221, 102 S.Ct. 2382, 2396, 72 L.Ed.2d 786 (1982), has not been viewed as a fundamental right provided by the Constitution, *San Antonio Indep. School Dist. v. Rodriguez,* 411 U.S. 1, 35, 93 S.Ct. 1278, 1297, 36 L.Ed.2d 16 (1973). Thus, "a State need not justify by compelling necessity every variation in the manner in which education is provided to its

> *See R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 77 (2d Cir.1984) (while doubts must be resolved in favor of party opposing summary judgment, opposing party must provide " 'concrete particulars' " showing need for trial and cannot merely assert conclusions without supplying supporting facts or arguments) (citation omitted).

population. See San Antonio Independent School Dist. v. Rodriguez, supra, [411 U.S.] at 28–39 [93 S.Ct. at 1293–1300]." Plyler v. Doe, supra, 457 U.S. at 223, 102 S.Ct. at 2398. "Differences in treatment of students in the educational process, which in themselves do not violate specific constitutional guarantees, do not violate the Fourteenth Amendment's Equal Protection Clause if such differences are rationally related to legitimate state interests." Guadelupe Org. Inc. v. Tempe Elem. School, 587 F.2d 1022, 1026 (9th Cir.1978) (footnote omitted).

Again I cannot determine whether plaintiffs' theory is 1) that coeducation infringes the girls' claimed right to an education in a single-sex school; or 2) that because the drop-out rate is higher in coeducational schools than in W.I.H.S., conversion will cause more girls to drop out of school and is thus a deprivation of the right to education. The Board's action can withstand either attack.

While the Supreme Court has indicated that "some identifiable quantum of education [may be] a constitutionally protected prerequisite to the meaningful exercise of [the right to vote or the right to speak freely]," San Antonio Indep. School Dist. v. Rodriguez, supra, 411 U.S. at 36, 93 S.Ct. at 1298, there is no "guarantee to the citizenry [of] the most effective speech or the most informed electoral choice," id. Similarly, there is no constitutional right to the best education possible. The plaintiffs' conclusion that a single-sex school enhances their daughters' academic experience, even if accurate, is irrelevant to the inquiry whether their right to education has been infringed. Cf. id.; Johnpoll v. Elias, supra, 513 F.Supp. at 432. The Board's action will pass constitutional muster if it "bears some rational relationship to a legitimate state purpose." San Antonio Indep. School Dist. v. Rodriguez, supra, 411 U.S. at 44, 93 S.Ct. at 1302.

The Board acted rationally and in furtherance of proper objectives in converting W.I.H.S. to a coeducational institution. Two reasons exist.

In the first place, rightly or wrongly, it perceived this action as necessary to comply with Title IX and thereby preserve the federal funding so essential to the maintenance of the school system. Whether or not conversion is in fact required under Title IX, it was not irrational for the Board to heed the S.E.D.'s warning that maintenance of an all-girls school was jeopardizing New York City's eligibility for federal monies.

In the second place, there exists an independent legitimate rationale for the Board's action: its belief that coeducation better prepares students for the real world. "[T]he attainment of a diverse student body.... clearly is a constitutionally permissible goal for an institution of higher education," Regents of the Univ. of California v. Bakke, 438 U.S. 265, 311–12, 98 S.Ct. 2733, 2759, 57 L.Ed.2d 750 (1978); see Keyishian v. Board of Regents, 385 U.S. 589, 603, 87 S.Ct. 675, 683, 17 L.Ed.2d 629 (1967) ("The Nation's future depends upon leaders trained through wide exposure to that robust exchange of ideas which discovers truth ..."), and I see no reason why the defendants could not regard the benefits of teaching students in an environment reflective of what they will encounter upon graduation as equally desirable in the secondary school context, see Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 16, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554 (1971) (recognizing school authorities' interest in preparing students "to live in a pluralistic society").

The coeducation of W.I.H.S. is thus a rational means of furthering either or both of two legitimate objectives: reducing the risk of loss of federal aid for failure to comply with Title IX and providing an educational environment that mirrors the diversity of modern society. Accordingly, the Board's action does not infringe the right to education in violation of the equal protection clause.

2. Suspect Classification

■ The other equal protection argument plaintiffs may be making is that the

Board, in converting W.I.H.S., is discriminating on the basis of sex. Under the heightened scrutiny applicable to gender classifications [5], governmental action will be upheld if it is substantially related to an important governmental interest. *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 724, 102 S.Ct. 3331, 3336, 73 L.Ed.2d 1090 (1982).

Before sifting the defendants' conduct through this unusually fine sieve, the plaintiffs must first demonstrate that there *is* discrimination. This they cannot do.

The Board's action cannot be characterized as a classification based on sex; in fact, it cannot be characterized as a classification at all. It is, rather, a de-classification: the undoing of the previously sex-based method of allocating places in W.I.H.S.[6] As such it is totally unlike the typical gender discrimination case, *see, e.g., Craig v. Boren*, 429 U.S. 190, 191–92, 97 S.Ct. 451, 453–54, 50 L.Ed.2d 397 (1976) (challenge to statute permitting sale of 3.2% beer to males under twenty-one and females under eighteen); *Reed v. Reed*, 404 U.S. 71, 72–73, 92 S.Ct. 251, 252, 30 L.Ed.2d 225 (1971) (challenge to statute preferring males as administrators of decedents' estates), in which plaintiffs challenge a statute or policy that treats them differently because of their sex.

The girls here are being treated exactly as the boys, no better, no worse.[7] I thus have serious doubt whether the heightened scrutiny appropriate when a state classifies on the basis of sex is applicable here. However, because the parties seem to have regarded intermediate scrutiny as proper, and because there is some support in the cases for such an approach, *see, e.g., Guadelupe Org. Inc. v. Tempe Elem. School, supra*, 587 F.2d at 1026–27 & n. 3 (finding no right under the equal protection clause to a bilingual, bicultural education, but suggesting that heightened scrutiny might be appropriate if it was suggested that the failure to provide such an education created a suspect classification), I now turn to consider the Board's action under the test enunciated in *Hogan, supra*, 458 U.S. at 724, 102 S.Ct. at 3336.[8]

---

**5.** Classifications based on sex are evaluated, for equal protection purposes, on a standard of intermediate scrutiny. *See Craig v. Boren*, 429 U.S. 190, 197, 97 S.Ct. 451, 456, 50 L.Ed.2d 397 (1976). This lies between "the largely toothless invocation of minimum rationality [which is generally applied to economic regulation] and the nearly fatal invocation of strict scrutiny [which is applied to classifications that burden fundamental rights or prejudice minority groups]." L. Tribe, *American Constitutional Law* § 16–30, at 1082 (1978).

**6.** Professor Tribe has noted "that non-classification, that is, government's omission to draw lines, is especially hard to challenge on the ground that it deprives persons of the right to be treated as equals ..." L. Tribe, *supra*, § 16–1, at 994 n. 19.

**7.** Plaintiffs argue essentially that their daughters have a right to be treated differently. Not surprisingly, they nowhere suggest the source of that right. Their reliance on *Lau v. Nichols*, 414 U.S. 563, 94 S.Ct. 786, 39 L.Ed.2d 1 (1974), is misplaced. In that case the Supreme Court held that non-English-speaking Chinese children in the San Francisco schools were denied equal educational opportunity. In so doing the Court relied solely on § 601 of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *see* 414 U.S. at 566, 94 S.Ct. at 788; it did not reach the argument

advanced under the equal protection clause. The court below had considered plaintiffs' argument that "[i]f the student is disadvantaged with respect to his classmates, [the Constitution imposes on the school] an affirmative duty to provide him special assistance to overcome his disabilities, whatever the origin of those disabilities may be." *Lau v. Nichols*, 483 F.2d 791, 794 (9th Cir.1973), *rev'd*, 414 U.S. 563, 94 S.Ct. 786, 39 L.Ed.2d 1 (1974). In rejecting that contention, the Court of Appeals stated:

Before the Board [of Education] may be found to unconstitutionally deny special remedial attention ... there must first be found a constitutional duty to provide [it].
However commendable and socially desirable it might be for the School District to provide special remedial educational programs to disadvantaged students ... we find no constitutional or statutory basis upon which we can mandate that these things be done.
*Id.* at 797–98.

**8.** Not only do plaintiffs allege that the Board's action fails the test enunciated in *Hogan*, but they also seek support for their position in the holding of that case. They contend that although the Court ruled that the all-woman college at issue there could not be maintained, it did not state that all single-sex institutions are necessarily unconstitutional. This argument

For essentially the reasons stated in the previous section, I find that the Board's action meets that test. The two reasons given by the Board—complying with federal regulations and providing a realistic educational environment—are important governmental objectives, and the sexual integration of the school system bears a direct and substantial relation to their achievement. Accordingly, even if subject to heightened scrutiny, the coeducation of W.I.H.S. would not offend the equal protection clause.

Plaintiffs' consternation with this result stems from their disagreement with the Board's policy that coeducational schools provide a better environment for useful learning than do single-sex schools. This does not, however, entitle them to judicial relief.

> By and large, public education in our Nation is committed to the control of state and local authorities. Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values.

*Epperson v. Arkansas*, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968).

■ Plaintiffs overlook this principle in arguing that because defendants have seen fit to provide a special school for homosexual students,[9] they are therefore compelled by the equal protection clause to provide a special school for plaintiffs' daughters as well. They suggest, in essence, an equal right to be treated differently.

Apart from the obvious difficulty in regarding girls, who make up half the student population, as similarly situated to homosexuals, who constitute a much smaller percentage, plaintiffs' theory wrongly assumes that because the Board has identified homosexuals as needing special educational assistance, it is somehow obliged to recognize girls as another. In scrutinizing

> a limitation on a reform measure aimed at eliminating an existing barrier.... [a court should be] guided by the familiar principles that a "statute is not invalid under the Constitution because it might have gone further than it did," *Roschen v. Ward*, 279 U.S. 337, 339 [49 S.Ct. 336, 336, 73 L.Ed. 722 (1929)], that a legislature need not "strike at all evils at the same time," *Semler v. Dental Examiners*, 294 U.S. 608, 610 [55 S.Ct. 570, 571, 79 L.Ed. 1086 (1935)], and that "reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind," *Williamson v. Lee Optical Co.*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563.

*Katzenbach v. Morgan*, 384 U.S. 641, 657, 86 S.Ct. 1717, 1727, 16 L.Ed.2d 828 (1966). Thus, the mere fact the Board, in the exercise of its educational discretion, has identified homosexuals as requiring special treatment does not give rise to any obligation to do the same for girls.

■ Equally misguided is plaintiffs' argument that W.I.H.S. is an affirmative action plan and that conversion is therefore improper. Such plans can be constitutional, *see Califano v. Webster*, 430 U.S. 313, 316–17, 97 S.Ct. 1192, 1194, 51 L.Ed.2d 360 (1977) (per curiam) (affirmative action plans can be justified if they intentionally and directly assist members of the sex that is disproportionately burdened); *Schlesinger v. Ballard*, 419 U.S. 498, 508–10, 95 S.Ct. 572, 577–78, 42 L.Ed.2d 610 (1975) (same), but "remedial provisions cast in terms of

suffers from the same infirmity as does plaintiffs' argument under Title IX: the fact that the Constitution may not forbid the maintenance of W.I.H.S. as an all-girls school does not mean that the Constitution *requires* that it be so maintained. One simply cannot derive a right from the absence of a prohibition.

9. The New York City Board of Education has approved the establishment of the Harvey Milk Off Site High School Program, which provides an educational setting for students who are unable to function in their regular high schools. *See* Pruitt Affidavit Exh. B. Because the Program is run by the Institute for the Protection of Lesbian and Gay Youth, Inc., most of the students are homosexual. *See id.* Exh. B at 6.

gender will be upheld ... only if they were in fact adopted for remedial reasons, rather than out of 'romantic paternalism,' and if they are in fact substantially well fitted to their remedial goals." L. Tribe, *American Constitutional Law* § 16–26, at 1068–69 (1978) (footnote omitted).

W.I.H.S. has traditionally been female, but it is pure whimsy to assert that any legislative, executive, judicial or administrative body has ever designated the school as an affirmative action site or that its all-girls status was intended to further any remedial purpose.[10] In any event, plaintiffs' theory is more basically and more fatally flawed: the mere fact that an affirmative action program at W.I.H.S. might be constitutional does not compel the Board to adopt or maintain it.

Accordingly, for the reasons stated above, the conversion of W.I.H.S. to a coeducational institution does not violate the equal protection clause.

## III. *Title VII*

■ The third provision under which plaintiffs have sued is Title VII, 42 U.S.C. § 2000e–2(a)(2), which provides:

> (a) It shall be an unlawful employment practice for an employer—
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

By its terms, "[t]his section only applies in an employer-employee situation." *Miss Greater New York City Scholarship Pageant v. Miss New York State Scholarship Pageant,* 526 F.Supp. 806, 808 (S.D.N.Y. 1981). Plaintiffs here are parents of girls enrolled at a school run by defendants. "Since there [is no] employment relationship between these plaintiffs and the defendants, there is no basis for a claim of employment discrimination." *Id.* (footnote omitted).

### Conclusion

There is no genuine issue of material fact for trial. The absence of any viable legal theory warranting the relief sought by plaintiffs entitles defendants to judgment as a matter of law. Accordingly, the motion for summary judgment is granted and the case is dismissed.

SO ORDERED.

---

**10.** To the contrary, all indications are that W.I.H.S.'s genesis as a single-sex institution was based on the stereotyped notions of the proper roles of the sexes that have been criticized by the Supreme Court as "archaic," *Mississippi Univ. for Women v. Hogan,* 458 U.S. 718, 725, 102 S.Ct. 3331, 3336, 73 L.Ed.2d 1090 (1982), and "paternalistic," *Frontiero v. Richardson,* 411 U.S. 677, 684, 93 S.Ct. 1764, 1769, 36 L.Ed.2d 583 (1973) (plurality opinion). *See* Schonhaut Affidavit Exh. B at A–3.