Jessica A. TURLEY, Plaintiff,

v.

SAUQUOIT VALLEY SCHOOL DIS-TRICT; Oneida County Board of Cooperative Educational Services; Robert Hanna, Superintendent, in his official and individual capacity; John and Jane Does, in their official and individual capacity as Teachers and Principal of Brookside/Midway School; Mrs. Estorowitz, in her official and individual capacity; John Doe, Superintendent of Boces in his official and individual capacity; and John & Jane Does, Defendants.

No. 01–CV–0515.

United States District Court, N.D. New York.

April 28, 2003.

A.J. Bosman, Rome, NY, for Plaintiff.

Gorman, Waszkiewicz, Gorman & Schmitt, Utica, NY (William P. Schmitt, of counsel), for Defendants Sauquoit Valley School District and Robert Hanna.

Costello, Cooney & Fearon, PLLC, Syracuse, NY (Samuel C. Young, of Counsel), for Defendants Oneida County Board of Educational Services, John Doe, John and Jane Does, and Mrs. Estorowitz.

## MEMORANDUM–DECISION and ORDER

HURD, District Judge.

### I. INTRODUCTION

Plaintiff Jessica A. Turley ("Turley") brought suit against defendants alleging four causes of action. (Verified Complaint, Docket No. 1). Though the language used in the Complaint is somewhat unclear, it appears that plaintiff seeks relief for the following violations: *First* Cause of Action—failure to supervise and protect students, both by causing students to attend a school ill-equipped for its purpose, and by failing to properly supervise classrooms, in violation of New York State law; *Second* Cause of Action—failure to install glass that would minimize or prevent injury to students, and/or failure to update, replace or inspect existing glass, in violation of New York State law; *Third* Cause of Action—failure to supervise, monitor, control, or observe students and to prevent injury to students by others, in violation of New York State law; and *Fourth* Cause of Action—infringement of the right to education, in violation of the New York State constitution, and the Fourteenth Amendment of the United States Constitution. Only the *Fourth* Cause of Action involves a federal claim.

All of the defendants have moved for summary judgment pursuant to Fed. R.Civ.P. 56. Plaintiff opposes. Oral argument was heard on April 11, 2003, in Utica, New York. Decision was reserved.

### II. FACTUAL BACKGROUND

Taken from the motion papers,[1] and viewed in a light most favorable to the

---

1. Defendants, as the moving parties, submitted statements of material facts in compliance with Local Rule 7.1(a)(3). Pursuant to that local rule subsection, plaintiff was required to file a response to these statements of material

nonmoving plaintiff, the following are the facts.

In August of 1996, Turley was a freshman at the district's high school. Her tenure at the high school was plagued by substantial academic and behavioral problems. As a result, meetings were held between school officials, the plaintiff, and her mother to discuss her possible referral to Brookside High School ("Brookside"), an alternative school operated by Oneida County Board of Cooperative Educational Services ("BOCES"). "Students were referred by the [d]istrict to Brookside when failing academically and behaviorally. No referrals were made by the [d]istrict to Brookside in the absence of a disciplinary problem[,][and] no referrals were made for strictly disciplinary problems." (Docket No. 23, ¶ 11). The stated intent of Brookside was to provide the proper environment for this type of student to graduate in a timely fashion from high school. Plaintiff and her mother consented to plaintiff's transfer from the district's high school to Brookside.[2]

Brookside was housed in a building formerly used by the district as an elementary school. The building was constructed in April 1969 with the full approval of the New York State Education Department. The glass in the building at the time plaintiff attended Brookside was the original glass installed in 1969. To operate Brookside, BOCES leased the building from the district. Pursuant to the terms of the lease, BOCES was responsible for the day-to-day operation of Brookside, as well as for the building's maintenance and repair. BOCES was also required to maintain insurance, naming the district as an additional insured, and to indemnify the district, as the landlord, for any losses it might become obligated to pay.

Turley began attending Brookside in the third quarter of her freshman year of high school, during the winter of 1997. She completed her freshman year at Brookside, but was enrolled in Midway High School ("Midway")—a smaller school within Brookside for students who required even more assistance—her sophomore and junior years before being transferred back to Brookside for her senior year.

"[P]laintiff testified that her typical day at Brookside/Midway was basically the

___

facts, "mirror[ing] the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs." Here, plaintiff, "in opposition to the defendants' motions for summary judgment," submitted a document entitled "Rule 7 Statement of Material Facts." (Docket No. 37). Notwithstanding the fact that the district defendants and the BOCES defendants *each* submitted statements of material facts for their *separate* motions, this was the only response offered by plaintiff. In addition, the numbered paragraphs in the document submitted by plaintiff fail to match up to the corresponding numbered paragraphs in either of the defendants' statements of material facts. Indeed, the words "admit" and/or "deny" appear now here in plaintiff's document. Plaintiff's document is thus more appropriately construed as a statement of additional material facts, which is permissible under Local Rule

7.1(a)(3). However, as plaintiff is required to specifically admit and/or deny each numbered paragraph offered by both defendants, her document is deficient and the facts asserted by the defendants "shall be deemed admitted," Local Rule 7.1(a)(3), except where her additional statement of material facts expressly contradicts a factual assertion by defendants.

2. Turley makes an attempt to dispute that such consent occurred, or, at the very least, that no documentation has been provided to prove consent. While plaintiff may be correct that no documentation has been so produced, she does not allege that her transfer to Brookside was forced or coerced, and in fact seems to admit in her moving papers that she and her mother approved the referral. (*See* Docket No. 30, p. 2). To what they consented instead seems to be the primary focus of the dispute.

same as it had been at [the district]." (Docket No. 42, ¶ 13). The major difference between the two schools was that Brookside afforded plaintiff the opportunity to complete her homework in class with more readily available assistance from school staff. Indeed, there is no question that plaintiff made significant academic improvements at Brookside/Midway, with no change in her actual curriculum. Brookside/Midway provided the same required classes as the district's high school, and provided other classes as well, with the exception of Spanish and Choir. Plaintiff graduated on time and participated in commencement ceremonies with the district's high school students. Her diploma bears the name of the district's high school, not Brookside or Midway. She now attends Mohawk Valley Community College.

Students enrolled at Brookside/Midway were also afforded the opportunity to participate in extracurricular activities at the district's high school if they so desired. Accordingly, plaintiff was permitted to attend the district's high school prom. As for the specific assistance provided to students, Brookside/Midway had smaller classes than the district's high school, and employed teacher's assistants to further aid students. Social workers filled the role of guidance counselors at the school.

However, Brookside/Midway was a "substandard" school where students were given designated smoking areas and times, and were without a library, school nurse, or guidance counselors. (Docket Nos. 30 and 47, p. 2). Harassment of female students was "freely and routinely tolerated" at Brookside/Midway, and the school was without safety glass in its windows. (Id.). The students were placed in the alternative school "because they were uncontrollable. There were fights, there was disrespect, there was often pandemonium. In addition to the fighting and hurting each other, students would kick walls, punch doors, tip over desks, and destroy property." (Id. at 3).

On June 1, 1998, during Turley's sophomore year, an incident occurred when she received personal injuries. She had informed school staff that a male student had been threatening to douse her with water all day. The school took no action. Thereafter, the student did cause water to come into contact with plaintiff. In retaliation, Turley ran into an administrative office, filled a cup with water, ran back into the hallway, and threw water on the student. The student chased plaintiff down the hallway where she was able to duck into a classroom and shut the door. Facing the door, she pressed against it so as to not allow the apparently irate student access to her. He began shouting at her to open the door. He then kicked the door, causing glass from a window on the upper portion of the door to break. The shards of glass struck plaintiff in the nose and forehead. She was taken to the hospital where she received stitches to several lacerations. She is permanently scarred, both mentally and physically.

### III. DISCUSSION

#### A. Summary Judgment Standard

Under Fed.R.Civ.P. 56, defendants, as the moving parties, are entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The ultimate inquiry is whether a reasonable jury could find for the nonmoving party based on the evidence presented, the legitimate inferences that could be drawn from that evidence in favor of the nonmoving party,

and the applicable burden of proof. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining a motion for summary judgment, all inferences to be drawn from the facts contained in the exhibits and depositions "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962), Nevertheless, "the litigant opposing summary judgment 'may not rest upon mere conclusory allegations or denials' as a vehicle for obtaining a trial." *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980) (quoting *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978)).

## B. *Federal Claim*

■ Turley alleges that the decision to transfer her from the school district's high school to Brookside/Midway violated her right to an education under the Equal Protection and Due Process clauses of the Fourteenth Amendment. This federal claim is without merit.

■ The Supreme Court has repeatedly held that the right to an education is neither explicitly nor implicitly guaranteed in the Constitution, and as such, cannot be considered "fundamental." *See San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 35–37, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *see also Kadrmas v. Dickinson Public Schools,* 487 U.S. 450, 459, 108 S.Ct. 2481, 101 L.Ed.2d 399 (1988); *Papasan v. Allain,* 478 U.S. 265, 284, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Martinez v. Bynum,* 461 U.S. 321, 328 n. 7, 103 S.Ct. 1838, 75 L.Ed.2d 879 (1983); *Plyler v. Doe,* 457 U.S. 202, 221, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). Though the federal constitution does not guarantee the right to education, states, including New York, recognizing that "ed-

ucation has a fundamental role in maintaining the fabric of our society[,]" *Plyler,* 457 U.S. at 221, 102 S.Ct. 2382, have overwhelmingly guaranteed said right as a constitutional property interest. *See Davis Next Friend LoShonda D. v. Monroe County Bd. of Education,* 526 U.S. 629, 664, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (Kennedy, dissenting) (noting that "the Constitution of almost every State in the country guarantees the state's students a free primary and secondary public education"). Once New York made the decision to constitutionally guarantee the right to education, it became obliged, under the due process mandates of the Fourteenth Amendment, to make education "available to all on equal terms." *Brown v. Bd. of Education,* 347 U.S. 483, 493, 74 S.Ct. 686, 98 L.Ed. 873 (1954). Nonetheless, because the right to education is not considered a fundamental right guaranteed by the *federal* Constitution, *federal* courts will uphold the constitutionality of *state action* affecting the right to education if the acts are rationally related to a legitimate state purpose. *See Rodriguez,* 411 U.S. at 17, 93 S.Ct. 1278.

The only possible *federal* basis for plaintiff's claim is that the decision to segregate certain types of students into the Brookside/Midway program, away from their peers at the district's high school, is not rationally related to a legitimate state objective. This basis is rejected. Students with behavioral and academic problems that were in danger of not graduating from high school on time were referred to Brookside/Midway by the school district. Certainly, desiring that students graduate from high school is a legitimate objective. When certain students are in danger of not achieving that objective, the school district takes action in the form of transferring them to a less intensive and more flexible program. To be sure, this action, as opposed to taking no action, is rationally related to the objective.

■■■ As for any qualms that plaintiff has with the *quality* of the education and/or environment at Brookside/Midway as compared to that received at the district's high school, it is initially noted that plaintiff is entitled to an education, not the best education possible. *See Jones on Behalf of Michele v. Bd. of Education of City School Dist. of City of New York,* 632 F.Supp. 1319, 1324 (E.D.N.Y.1986). In any event, federal courts should exercise restraint in intruding into an area the Supreme Court has held is left to the states, i.e., the establishment, governance, regulation, and operation of public schools. *See Epperson v. State of Arkansas,* 393 U.S. 97, 104, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968) ("Judicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint.... By and large, public education in our Nation is committed to the control of state and local authorities. Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values").

■■■ Assume that Brookside/Midway was a substandard school with respect to state established constitutional, statutory and/or common law mandates. Assume further that plaintiff received an inferior education, in a physically inadequate facility, with unqualified and/or ineffective teachers in a chaotic and/or unsafe environment as opposed to the high school. However unfortunate such a situation may be, it does not involve a basic *federal* constitutional right—such as the right to be free from discrimination.

It is obvious that the more appropriate forum in which to find a remedy for such deficiencies is state court. Indeed, plaintiff's complaint is dominated by allegations relating solely to state law. It makes little sense for a federal court to adjudicate the dispute, especially where the alleged basis for federal jurisdiction is so tenuous, and the underlying issues so mired in areas governed by the state.

**C. *State Claims***

■■■ As plaintiff's only federal claim will be dismissed with prejudice, supplemental jurisdiction over the remaining state law claims is declined and those claims will be dismissed without prejudice.

**IV. *CONCLUSION***

Plaintiff's remedy, if any, is not to be determined by a federal court. Her allegations, for the most part, relate to negligence and educational quality, areas traditionally and exclusively regulated by the state that are held in check by the federal courts only to the extent that actions affecting such areas must be rationally related to a legitimate objective. Transferring students to an academically less intense environment is rationally related to the legitimate state objective of having students graduate from high school. In addition, her allegations that the defendants operated a substandard school at Brookside/Midway does "not directly and sharply implicate basic constitutional values." *Id.* Plaintiff's federal claim must be dismissed with prejudice.

Accordingly, it is

ORDERED that

1. The *Fourth* cause of action insofar as it alleges a federal constitutional claim is DISMISSED with prejudice; and

2. The remaining causes of action are DISMISSED without prejudice.

The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.