BRIAN MCGAW, an Infant, by His Parent, JOSEPH MCGAW, et al., Respondents, v HUNTINGTON HOSPITAL et al., Defendants. COUNTY OF SUFFOLK, Appellant.

Second Department, October 4, 1982

APPEARANCES OF COUNSEL

*David J. Gilmartin, County Attorney (Alfred Jackson, Jr., of counsel),* for appellant.

*Grutman Miller & Greenspoon (Jeffrey H. Daichman of counsel),* for respondents.

**OPINION OF THE COURT**

BOYERS, J.

The paramount issue on this appeal is whether, pursuant to section 2582 of the Public Health Law, the County of Suffolk (the county) is entitled to reimbursement from

plaintiffs for moneys it has expended to provide certain essential therapy services to the handicapped infant plaintiff. We hold that it is not.

Brian McGaw, the infant plaintiff, was born November 2, 1971. Shortly thereafter, due to the medical malpractice of the defendants, who are not parties to this appeal, Brian sustained irreversible brain damage and, as a result, he is mentally retarded and physically handicapped. In 1979, this medical malpractice action, which had been instituted by Joseph McGaw, individually and on his son's behalf, resulted in a settlement of $1,000,000 during the pendency of defendants' appeal from a judgment entered upon a greater verdict in plaintiffs' favor.

Following entry of the judgment reflecting the jury award and prior to the settlement, the county, which was not a party to the action, moved at Special Term for an order requiring that it be reimbursed out of the proceeds of any recovery by plaintiffs in their malpractice action, the sum of $33,697.97, representing payments the county had made to St. Charles Hospital, Port Jefferson, New York, for certain therapy services that that health care provider had furnished the infant plaintiff. Plaintiffs cross-moved for an "order and judgment" against the county in the sum of $12,804.01, representing direct payments made by the handicapped infant's parents and their insurance carrier to St. Charles Hospital.

The county reduced its claim by $930, an amount representing direct payments made to St. Charles Hospital by plaintiffs, and opposed plaintiffs' cross motion for restitution, maintaining that plaintiffs' claim was time barred and, additionally, that Special Term lacked jurisdiction to entertain the matter in the form of a cross motion. Although plaintiffs did serve certain motion papers relating to this action on the Board of Education, Huntington Union Free School District, the school district did not appear and is not a party to this appeal.

Specifically, the county asserted that pursuant to title 5 of article 25 of the Public Health Law, it had paid for certain medical services furnished the infant plaintiff by St. Charles Hospital and, therefore, in accordance with the

provisions of subdivision 3 of section 2582 of the Public Health Law, the county Commissioner of Health was entitled to recover all or part of such expenditures from the person or persons legally responsible for the infant's support.

The particular services at issue were provided the infant Brian McGaw during the period January 28, 1973 through December 31, 1978, and comprised sessions of physical, occupational and speech therapy. Special Term initially directed a hearing to determine, *inter alia,* what portion of the moneys paid by the county were for medical services as defined by subdivision 2 of section 2581 of the Public Health Law; however, the parties subsequently stipulated that a factual hearing on this issue was not required, there being only a question of law as to the county's right to be reimbursed.

Plaintiffs asserted that the therapy services rendered the infant were educational in nature rather than medical, and, as such, by constitutional and statutory mandate, were the obligation of the county or local school district. Plaintiffs noted that certain of the expenses at issue were attributable to educational services rendered Brian as part of the program offered by the Board of Co-operative Educational Services (BOCES) facility located at St. Charles Hospital; in which Brian has been enrolled since the age of three years. Moreover, plaintiffs asserted that the county's claims for reimbursement were time barred.

In its brief on appeal, the county concedes that under present law, the services at issue "should [have been] rendered by the Huntington School District at no cost to the parent"; however, the county's position at Special Term and on appeal remains that the therapy services at issue were separate and distinct from those provided by the BOCES educational program funded by the Huntington School District, and constituted medical services in that they were furnished in response to annual applications for medical assistance made by the infant's parents and provided for under the auspices of the Suffolk County Department of Health Services' physically handicapped children's program. The county additionally observed that had plaintiffs properly applied to the school district for funding, the

county would have been spared the expense it had incurred. While it did agree with plaintiffs' position that any claims for reimbursement from the school district not made within the school year for which they were sought were time barred, the county argued that any failure to seek reimbursement could not be attributed to the county.

Special Term denied the county's motion and granted plaintiff's cross motion, concluding that "the expenses provided for the care of the child were educational or education related, not medical". It is from the order entered upon this ruling that the county appeals.

Initially, it is clear that the funds at issue were expended by the county to pay for therapy services this handicapped infant received at St. Charles Hospital, and that those services were made available as a result of the plaintiff parent's application for assistance to the Suffolk County Department of Health Services' physically handicapped children's program.

This program was established to comply with the mandate of title 5 of article 25 of the Public Health Law (Public Health Law, § 2580 *et seq.*), which reflects the Legislature's implementation of this State's enunciated policy "to provide medical service for the treatment and rehabilitation of physically handicapped children" (Public Health Law, § 2580).

In a more concrete fashion, the Legislature has imposed an affirmative duty upon the State Commissioner of Health to provide, within the limits of his appropriations, "such medical service for physically handicapped children as in the [commissioner's] judgment * * * is needed" (Public Health Law, § 2582, subd 1; see *Matter of Sawyer v Vanadzin,* 67 Misc 2d 772), "medical service" being defined as "such diagnostic, therapeutic, and rehabilitative care by medical and paramedical personnel, including hospital and related care, and drugs, prostheses, appliances, equipment and devices as necessary" (Public Health Law, § 2581, subd 2).

On a local level, title 5 provides that any county Commissioner of Health "may issue authorizations for medical service[s] for physically handicapped children" and, if such

authorized services are provided, "the expenses thereof, when approved by [the local] health commissioner * * * shall be a charge upon the county" (Public Health Law, § 2582, subd 2). Additionally, the parents of applicants for financial assistance under a county handicapped children's program may be required to contribute toward the expenses incurred, in that a county Health Commissioner is authorized to determine and order that persons charged with the legal duty to support a handicapped child contribute part or all of the cost of any authorized medical services furnished pursuant to the statute (Public Health Law, § 2582, subd 3). Such orders are reviewable by the Family Court (Public Health Law, § 2582, subd 3; Family Ct Act, § 232, subd [c], par [2]).

While subdivision 3 of section 2582 of the Public Health Law provides that the Health Commissioner of the physically handicapped children's program may, pursuant to section 232 of the Family Court Act, institute a proceeding in the Family Court to compel contribution, we agree with the county's contention that the Supreme Court in this instance could properly entertain the county's application. Pursuant to subdivision (b) of section 115 and section 232 of the Family Court Act, the Family Court has jurisdiction over proceedings concerning physically handicapped or retarded children (see *Matter of Leitner,* 38 AD2d 554, 555); however, such jurisdiction is concurrent with that of the Supreme Court as to such matters (NY Const, art VI, § 7; Family Ct Act, § 114; *Kagen v Kagen,* 21 NY2d 532). Furthermore, Special Term equally had jurisdiction to entertain plaintiffs' cross motion for reimbursement.

Addressing the merits, it is the county's position, *inter alia,* that it is entitled to reimbursement of the moneys it has expended for Brian McGaw under its program for physically handicapped children for occupational, physical and speech therapy sessions because such payments were, by definition, expenses for medical services under subdivision 2 of section 2581 of the Public Health Law. Plaintiffs, on the other hand, would persuade this court that the therapy services provided the infant were educational rather than medical and, therefore, in accordance with the right of handicapped children to a free appropriate public

education, the county cannot claim reimbursement. We agree with Justice McINERNEY at Special Term, that the services provided to the infant plaintiff, namely, occupational, speech and physical therapy, were in fact education-related services which were properly furnished the infant free of cost.

Section 1 of article XI of the Constitution of our State mandates that "[t]he legislature shall provide for the maintenance and support of a system of free common schools, wherein *all* the children of this state may be educated" (emphasis supplied; see, also, Education Law, § 3202, subd 1). This right to a free education constitutes a benefit which encompasses all children in the State, however handicapped they may be (*Matter of Levy,* 38 NY2d 653, app dsmd 429 US 805, reh den 429 US 966; *Matter of Wiltwyck School for Boys v Hill,* 11 NY2d 182, mot for rearg den 11 NY2d 1017; *Rogers v Association for Help of Retarded Children,* 308 NY 126; *Matter of Summit School v Neugent,* 82 AD2d 463). Handicapped children are further assured of such free specialized educational training as may be required according to their individualized needs (*Matter of Levy, supra; Matter of Kaye,* 54 AD2d 907, 908; see, generally, Education Law, § 4401 *et seq;* Family Ct Act, § 231 *et seq;* see, also, US Code, tit 20, § 1400 *et seq.*).

To facilitate execution of this constitutional mandate, the Legislature has enacted several statutes, implementation being primarily through article 89 of the Education Law (Education Law, §§ 4401-4409). Subdivision 1 of section 4401 of the Education Law (as amd by L 1980, ch 53, § 23, eff July 1, 1980) defines a "child with a handicapping condition" as one "who is entitled to attend public schools pursuant to section thirty-two hundred two of this chapter and who, because of mental, physical or emotional reasons can receive appropriate educational opportunities from special services and programs *to include, but not limited to* * * * the special services and programs delineated in subdivision two of this section" (emphasis supplied). This subdivision, like its predecessor (see L 1976, ch 853, § 3) is nonexclusive.

Although the particular therapy services rendered the infant in the case at bar were not specifically delineated in

subdivision 2 of section 4401 of the Education Law, entitled "Special services or programs", as originally enacted (see L 1976, ch 853, § 3), the statute has since been amended to include within the scope of special services and programs the following: "Related services which shall in appropriate cases be furnished to children with handicapping conditions shall include * * * occupational therapy, physical therapy, speech pathology, medical services as defined by regulations of the commissioner, psychological services, and other appropriate support services" (Education Law, § 4401, subd 2, par k, as added by L 1980, ch 53, § 25).

The educational nature of the services rendered Brian McGaw is also reflected in the regulations of the Commissioner of Education (see 8 NYCRR 200-1.1 [s], eff through June 30, 1982; 8 NYCRR 200-2.1 [ee], renum 200.1 [dd], eff July 1, 1982) and Federal laws intended to, *inter alia,* "assure that all handicapped children have available to them * * * a free appropriate public education which emphasizes special education and related services designed to meet their unique needs, to assure that the rights of handicapped children * * * are protected [and] to assist States and localities to provide for the education of all handicapped children (US Code, tit 20, § 1400, subd [c]; see, e.g., US Code, tit 20, § 1401, subds [17], [18]).

In view of the afore-mentioned, we hold that although the therapy services furnished Brian McGaw were not clearly delineated as educational services when originally provided to him, the Legislature has since made it clear under the statutory scheme that such services are specifically an integral part of the free public education to which this handicapped infant is entitled under the Constitution of our State (NY Const, art XI, § 1). It is well established that the burden of providing such educational services falls, not upon the parents or other persons liable for the handicapped child's support, but upon the government, such charge being in the first instance upon the county (*Matter of Lee E.B.,* 39 NY2d 962; *Matter of Kaye,* 54 AD2d 907, *supra*).

Accordingly, Special Term's denial of the county's motion for reimbursement was proper.

The court erred, however, in granting plaintiffs' cross motion for reimbursement of those payments made directly to St. Charles Hospital by the infant's family and its insurance carrier.

Parents, or others, who have made payments for special educational services rendered handicapped children are required to present their claims for reimbursement within the particular school year for which the educational aid was provided (*Matter of L. v New York State Dept. of Educ.*, 39 NY2d 434; *Matter of Lawrence P.*, 55 AD2d 911).

In the case at bar, reimbursement is sought for funds expended during the 1972-1973 through 1978-1979 school years. As plaintiffs' claim for reimbursement, interposed in October, 1980, was not made within the school years for which the funds were requested, their application should have been rejected as untimely. Therefore, the cross motion should have been denied.

We have considered the other issues raised by the parties and find them to be without merit.

Accordingly, the order of Special Term should be modified by striking that part which granted plaintiffs' cross motion, and by denying the cross motion.

O'CONNOR, J. P., BRACKEN and NIEHOFF, JJ., concur.

Order of the Supreme Court, Suffolk County, dated February 5, 1981, modified, on the law, by deleting the provision which granted plaintiffs' cross motion and substituting a provision denying the cross motion. As so modified, order affirmed, without costs or disbursements.