Timothy J. CONNOLLY, on behalf of himself and all others similarly situated, Plaintiff–Appellant,

v.

H. Carl McCALL, individually and in his capacities as Comptroller of The State of New York and as the Sole trustee of the New York State and Local Employees' Retirement System and his predecessors, the New York State and Local Employees' Retirement System; George C. Sinnott, individually and in his capacities as Head of the New York State Department of Civil Service and his predecessors; New York State Civil Service Commission, Defendants–Appellees.

Docket No. 00–7631.

United States Court of Appeals, Second Circuit.

Argued May 29, 2001.

Decided June 14, 2001.

William Hughes Mulligan, Jr, Bleakley Platt & Schmidt, LLP, White Plains, NY, for Plaintiff–Appellant.

. Melanie L. Oxhorn, Assistant Solicitor General (Michael S. Belohlavek, Deputy Solicitor General, on the brief), for Eliot Spitzer, Attorney General of the State of New York, for Defendants–Appellees.

Before CALABRESI and KATZMANN, Circuit Judges, KAPLAN *, District Judge.

* The Honorable Lewis A. Kaplan, United States District Judge for the Southern District of New York, sitting by designation.

PER CURIAM:

Plaintiff-appellant Timothy J. Connolly, a former employee of the New York City Police Department (the "NYPD") and a current employee of the New York State Organized Crime Task Force (the "Task Force"), challenges New York State's statutory scheme governing the eligibility for public pensions of those employees who work in one public job, retire, and then begin work in a second public job. In particular, Connolly alleges that it violates the federal constitution for New York to require that its retired public employees, while they are employed in a subsequent public job, either forgo receipt of the pension benefits accrued from the first job or forgo accumulation of additional pension benefits from the second job. The United States District Court for the Southern District of New York (Batts, *Judge* ) granted defendants' motion to dismiss, ruling that Connolly's claims were untimely because they accrued in 1984 when he began his current job with the Task Force. Although we agree with Connolly that he has a timely claim, we nonetheless affirm on the separate ground that his allegations fail to support the conclusion that New York's pension system is unconstitutional.

*Background*

After twenty-three years of service, Connolly in 1983 retired from the NYPD. At that time he was fully vested in certain retirement benefits from the New York City Police Pension Fund, which is part of New York's pension system for state and local employees. A few months later, Connolly began a new job as a special investigator for the Task Force, where he continues to work.

Connolly's employment with the Task Force triggered the application of two inter-locking provisions of New York civil service and retirement law. First, section 150 of the New York Civil Service Law states a longstanding rule that

> [I]f any person subsequent to his or her retirement from the civil service of the state or of any municipal corporation or political subdivision of the state, shall accept any office, position or employment in the civil service of the state [or any subdivision] ... any pension or annuity awarded or allotted to him or her upon retirement ... shall be suspended during such service or employment and while such person is receiving any salary.

Second, section 211 of the New York Retirement and Social Security Law provides an exception to this rule, permitting "a retired person [to] be employed and earn compensation in a position or positions in the public service, without any effect on his status as retired and without suspension or diminution of his retirement allowance," provided that certain conditions are met, including receiving the approval of appropriate administrators. In exchange for receiving both pension and salary, those who invoke this exception, known as a "section 211 waiver," are excluded from participation in the pension plan associated with their second public job. *See* N.Y. Retire. & Soc. Sec. Law § 213.

Taken together, these provisions require a retired state or local employee who accepts a subsequent state or local job to choose, during the period he receives a salary from the second job, between (1) not receiving pension benefits from the first job but accruing additional pension benefits from the second job, or (2) receiving pension benefits from the first job but not accruing further benefits from the second job. *See generally Baker v. Regan,* 68 N.Y.2d 335, 509 N.Y.S.2d 301, 501 N.E.2d 1192 (1986); *Brown v. New York State Teachers' Retirement Sys.,* 107 A.D.2d 103, 485 N.Y.S.2d 871 (3d Dep't

1985); *Syrewicz v. New York State Teachers' Retirement Sys.*, 79 A.D.2d 1072, 435 N.Y.S.2d 808 (3d Dep't 1981). Option (1) is the default, whereas election of option (2) requires affirmative application by the employee and approval by the relevant administrator. Moreover, section 211 waivers are valid for no more than two years, after which time they must be renewed. *See* N.Y. Retire. & Soc. Sec. Law § 211(b). This choice between receiving the first pension and accruing the second is required only when both the first and second jobs are with New York state or local government, not when either job is with an employer outside the New York public employee pension system.

Since beginning his employment with the Task Force, Connolly has applied for and been granted section 211 waivers, thereby allowing him to receive his NYPD pension and excluding him from accrual of the pension benefits that would otherwise be associated with his Task Force job. In 1998, Connolly filed this action seeking to represent a class of similarly situated New York public employees and alleging that the pension system described above violates, *inter alia*, federal guarantees of due process and equal protection. Defendants, various individuals and government agencies associated with the New York public pension system (collectively "New York"), moved to dismiss, principally on the ground that the complaint failed to state a claim for which relief can be granted. Connolly cross-moved for class certification.

The district court granted defendants' motion and denied plaintiff's as moot. The court ruled that plaintiff's claims were untimely because (1) they were subject to a three-year statute of limitations, (2) the claims accrued in 1984 when he began employment and "knew or should have known that he would not be permitted to participate in a second pension plan," and (3) the complaint was not filed until 1998. The court rejected plaintiff's claim that New York's continuing requirement that he choose between the two pensions constituted a continuing violation, the most recent instance of which fell within the limitations period. The court then declined to exercise supplemental jurisdiction over plaintiff's remaining state law claim.

### Discussion

■ We review *de novo* the district court's decision and will affirm only if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim[s] which would entitle him to relief.' " *Tarshis v. Riese Org.*, 211 F.3d 30, 35 (2d Cir.2000) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In making this assessment, we "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *Id.*

On appeal, the parties have, understandably enough, focused on the district court's statute of limitations reasoning, but they have also briefed the merits of plaintiff's claims. Because we think that appellant's claim with respect to the most recent section 211 waiver is timely, we reach the merits and affirm on those grounds. *See McNally Wellman Co. v. New York State Elec. & Gas Corp.*, 63 F.3d 1188, 1194 (2d Cir.1995) ("We need not affirm for the reasons expressed by the district court but may affirm on any ground supported by the record.").

### I. Timeliness

■ The parties agree that Connolly's federal constitutional claims, brought pursuant to 42 U.S.C. § 1983, are governed by New York's three-year statute of limita-

tions for personal injury actions, as well as the state's tolling rules. *See Owens v. Okure,* 488 U.S. 235, 240–41, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); *Board of Regents v. Tomanio,* 446 U.S. 478, 484, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). "While state law supplies the statute of limitations for claims under § 1983, federal law determines when a federal claim accrues. The claim accrues when the plaintiff knows or has reason to know of the harm." *Eagleston v. Guido,* 41 F.3d 865, 871 (2d Cir. 1994) (internal quotation marks and citation omitted).

The district court held that plaintiff's claims were untimely. It reasoned that his only claims accrued in 1984 when he began his Task Force employment. We disagree.

The harm plaintiff complains of—his inability to accrue Task Force pension benefits—is always the result of actions taken no more than two years before, that is, when the most recent section 211 waiver was sought and granted. In this respect, this case is most analogous to those involving the repeated application of a discriminatory policy, such as *Guardians Association of the New York City Police Department, Inc. v. Civil Service Commission of City of New York,* 633 F.2d 232 (2d Cir.1980). In *Guardians* we considered the repeated use of a hiring list, compiled by using a discriminatory examination, to decide hiring priority for the New York Police Department. We concluded that a new violation accrued each time the list was used to make an employment determination, even though the order of the list had been determined at an earlier date. *See id.* at 250–51. Similarly, here Connolly, notwithstanding the fact that he knew in advance of this requirement, was forced every two years to give up accrual of Task Force pension benefits in order to retain his NYPD pen-

sion. As a result, a new claim accrued each time. *See Bazemore v. Friday,* 478 U.S. 385, 395–96, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986) (holding that "[e]ach week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII, regardless of the fact that this pattern was begun prior to the effective date of Title VII").

Appellees contend that construing New York's conduct in this way, and therefore giving Connolly a new cause of action with each renewal of the section 211 waiver, would unfairly "save an action that the plaintiff could have brought within the limitations period had he exercised reasonable diligence." But this objection relies on the erroneous assumption that, when a person knows in advance that he will be injured, his claim accrues even before he has suffered injury.

Instead, what matters is "when the plaintiff knows or has reason to know of *the harm*" that he seeks to redress, *Eagleston,* 41 F.3d at 871 (emphasis added), not when the plaintiff knows of a policy that will, sometime in the future, give rise to that harm. When a plaintiff challenges a policy that gives rise over time to a series of allegedly unlawful acts, it will often be the case that plaintiff might bring his claim after the first such act, and yet the law may render timely a claim brought prior to the expiration of the statute of limitations on the last such act.

In sum, this is not a case in which the plaintiff simply "continues to feel the effects of a time-barred [wrongful] act." *Harris v. City of New York,* 186 F.3d 243, 250 (2d Cir.1999). Whatever might have been the case had there been a single irrevocable decision in 1984 to forgo Task Force pension benefits in order receive the NYPD benefits, here New York required Connolly to renew that choice, and it can-

not complain if an action is based on the existence of this requirement. Accordingly, we hold that Connolly's challenge to New York's statutory scheme is timely with regard to the injuries arising from the most recent occasion on which he was required to choose between his NYPD and Task Force pensions.[1]

## II.  The Merits

Connolly challenges New York's statutory scheme principally under the Due Process and Equal Protection Clauses of the 14th Amendment. In both cases, he fails to state a claim upon which relief can be granted.

## A.  Due Process

■ Connolly's due process claim is not procedural in nature. He does not, for instance, attack the means by which New York has determined that his particular case falls within the class of cases governed by the section 211 waiver scheme. Instead, he challenges the substantive fairness of New York law in this area. This feature is fatal to his claim because Connolly has failed to identify a protected property interest of which he has been deprived. Indeed, what he is objecting to is the very fact that New York law confers no property interest on people in his circumstances. Because Connolly lacks any "legitimate claim of entitlement" under state law to Task Force pension benefits for the period of time during he which he receives NYPD pension benefits pursuant to a section 211 waiver, his due process claim is without merit. *See Colson v. Sillman,* 35 F.3d 106, 108 (2d Cir.1994).

## B.  Equal Protection

Connolly's equal protection theory is premised on the disparity of treatment between New York state and local employees who previously worked for another state or local employer, and those who previously worked for a private employer, or a non-New York public employer. Only the former class of employees is forced to choose between giving up the pension associated with their prior job and giving up accrual of additional pension benefits in their subsequent New York public employment.

■ Connolly concedes that the policy is to be afforded deferential "rational basis review." Under this standard, we will uphold the statute so long as "there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Tarbe v. Berkel, Inc.,* 196 F.3d 136, 137 (2d Cir.1999) *(per curiam)* (quoting *Heller v. Doe,* 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)). New York need not "produce evidence to sustain the rationality of a statutory classification," *Heller,* 509 U.S. at 320, 113 S.Ct. 2637; instead, "a classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification," *id.* (internal quotation marks omitted). Accordingly, it can be appropriate to dismiss an equal protection challenge on the pleadings and prior to discovery. *See Knapp v. Hanson,* 183 F.3d 786, 789 (8th Cir.1999); *Mixon v. State of Ohio,* 193 F.3d 389, 400 n. 9 (6th Cir.1999).

■ New York argues that its approach to pension benefits for re-employed

---

**1.** Because we ultimately reject these claims on their merits, we have no need to decide whether the continuing violation doctrine saves those claims arising from section 211 waivers that took place more than three years before Connolly filed this suit. That issue would affect only damages.

retirees furthers its legitimate interest in saving money by barring pension practices that have the character of "double-dipping." The default policy of preventing receipt of a public pension while also receiving a public salary reflects the notion that such simultaneous income streams "could constitute an abuse of the public fisc." *Baker,* 509 N.Y.S.2d 301, 501 N.E.2d at 1193. The exception to this rule carved out by section 211 simply gives employees a choice between two different ways of limiting their drain on public funds: deferring pension benefits from their first job or forgoing pension benefits from their second job. *See Brown,* 485 N.Y.S.2d at 874 (characterizing section 211 waiver system as preventing "double dipping" in two pension systems). Whether sound policy or not, there is nothing irrational about the state deciding that at any one time a public employee should not both be accruing a new public pension and receiving an old public pension. Under the default rule he accrues but does not receive, and under section 211 he receives but does not accrue.

Connolly argues that it is irrational to apply the "double-dipping" rationale only when the employee's first pension is a New York pension. Although it might also be rational for the state to bar public employees from participating in the pension plan associated with their present public job whenever they are already drawing pension benefits from a prior job of any sort, it is plainly also rational to limit the policy to those circumstances where both pension plans at issue are New York plans. *See Heller,* 509 U.S. at 321, 113 S.Ct. 2637 (a state policy will not be struck down simply because "it is not made with mathematical nicety," "results in some inequality," or constitutes a "rough accommodation[ ]") (internal quotation marks omitted). When both the jobs, and their associated pension plans, involve New York public employment, the state's interests in, and control over, their financial consequences are stronger than when only the second job involves New York public employment. *See Brown,* 485 N.Y.S.2d at 876 (summarily rejecting equal protection challenge premised on "the fact that public pensioners who undertake private employment are not subject to the same conditions and limitations as public pensioners who return to public employment"); *Slavsky v. New York City Police Dep't,* 967 F.Supp. 117, 120 (S.D.N.Y.1997) (rejecting equal protection challenge to similar New York City rules and noting that "[t]he fact that the City also could have restricted pension payments for those who take private employment does not mean that it cannot limit expenditures for those whom the public fisc is liable for both the pension and the employment benefits").

At root, Connolly's theory is that pension benefits should be conceived of as deferred compensation, and not simply a form of retirement security, the entitlement to which decreases in the presence of other sources of income. But the choice between these two ways of approaching pension benefits is one left to New York's legislature, not the federal courts. *See Heller,* 509 U.S. at 319, 113 S.Ct. 2637 ("[R]ational-basis review in equal protection analysis 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.' ") (quoting *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)). Accordingly, New York's approach does not offend federal principles of equal protection.

### *Conclusion*

Connolly has offered additional arguments, but, having considered them all, we

44

find them to lack merit. Accordingly, we AFFIRM the judgment of the district court.