**Ashley ANDREE an infant, by her Mother and Natural Guardian, Christine ANDREE, and on behalf of all persons similarly situated, Plaintiff,**

**Franklin Moronta, an infant, by his Mother and Natural Guardian, Regina Vargas, and on behalf of all persons similarly situated, Intervenor–Plaintiff,**

v.

**The COUNTY OF NASSAU and Richard Sherman, Individually and as Commissioner of the Nassau County Department of Social Services, Defendants.**

No. 02–CV–688 (ADS)(ETB).

United States District Court, E.D. New York.

March 26, 2004.

---

Fitzgerald & Fitzgerald, P.C., Yonkers, NY (Mitchell Gittin, of Counsel), for the Plaintiff.

Nassau County Attorney's Office, by Deputy County Attorney Bonnie Garone SPATT, District Judge, Mineola, NY, for the Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

At issue here are the allegations of the plaintiffs that Nassau County has a policy of unlawfully imposing Medicaid liens on personal injury awards for reimbursement of moneys paid for pre-school and school based special education and related services to disabled children, which are mandated by the law to be provided free of charge.

The amended complaint asserts, among other things, violations of the Individuals with Disabilities Education Act, the Rehabilitation Act, and the Due Process and

Equal Protection Clauses of the Fourteenth Amendment. Among other requests for relief, the amended complaint also seeks a declaratory judgment pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2001, stating that Nassau County's past and present policy of fixing, calculating and asserting Medicaid liens is unlawful and that the defendants may not assert any lien for monies paid through the Medicaid program for pre-school and school-based special education and related services provided pursuant to a disabled child's Individualized Education Program.

The plaintiff Christine Andree ("Andree") and the intervenor-plaintiff Regina Vargas ("Vargas") (collectively, the "plaintiffs") bring this action on behalf of their respective children, Ashley Andree ("Ashley") and Franklin Moronta ("Franklin") and all persons similarly situated. The plaintiffs allege that the County of Nassau and Richard Sherman ("Sherman"), individually and as Commissioner of the Nassau County Department of Social Services (collectively, the "defendants"), inflated their Medicaid liens on the judgments of Ashley and Franklin in their respective personal injury actions. The plaintiffs allege that the defendants violated, among other things, the Individuals with Disabilities Education Act, § 601 et seq., *as amended* 20 U.S.C. 1400 et seq. (the "IDEA"), the Rehabilitation Act, 29 U.S.C. § 794, and the Fourteenth Amendment.

Presently before the Court is a motion to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.") for failure to state a claim upon which relief can be granted.

## I. BACKGROUND

The facts are taken from the amended complaint unless otherwise noted. The parties are as follows: Ashley is a 14 year old girl; Andree is Ashley's mother and appointed guardian; Regina Vargas is the mother and natural guardian of Franklin; the County of Nassau is a municipal corporation in New York State that maintains the Nassau County Department of Social Services (the "DSS"); the DSS administers, among other things, Nassau County's programs for public assistance, Medicaid and child protective services; and Sherman is the Commissioner of the DSS.

The Medicaid program is a jointly-funded federal and state medical assistance program under Title XIX of the Social Security Act (the "Act"). New York State has implemented the Act pursuant to Article 5, Title 11 of the New York State Social Services Law (the "SSL"). Pursuant to the Medicaid program, the DSS reimburses health care providers for care rendered to Medicaid recipients. The DSS also uses Medicaid funds to pay claims submitted by local school districts and other educational service providers for a variety of services that they furnish to Medicaid recipients.

### A. Facts Relating to Ashley Andree

The plaintiff contends that on July 4, 1989, the day Ashley was born, she suffered serious and permanent physical injuries due to the negligence of the attending physician at Winthrop University Hospital in Mineola, New York ("Winthrop"). In November, 1994, Andree, on behalf of Ashley, filed a medical malpractice action against the attending physician and Winthrop in Supreme Court, Nassau County. A jury found in favor of the plaintiff against the attending physician. The claims against Winthrop were dismissed. In August, 1999, the state court entered judgment against the attending physician in the sum of $5,473,338 (the "Andree Judgment"). In August, 2001, the attending physician's insurers made a partial payment of $2,316,161.08.

From the date of her birth to her receipt of the partial payment, Ashley received Medicaid benefits. The payment in partial satisfaction of the Andree Judgment, rendered Ashley ineligible to receive further Medicaid benefits. During the time that Ashley was eligible to receive Medicaid benefits, the DSS provided Ashley with medical assistance for the injuries that she sustained at birth. Pursuant to SSL § 104–b(1), the DSS filed a notice of lien in the Nassau County Clerk's office claiming a lien in the sum of $92,451.98 on the proceeds of the judgment against the attending physician. On November 26, 2001, the Nassau County Surrogate's Court ordered that the sum of $92,451.98 be held in an interest-bearing escrow account pending settlement or adjudication of the Medicaid lien of DSS.

From the time that Ashley has been enrolled in school, she has been a "child with a disability" as defined under 20 U.S.C. § 1401(3). As such, beginning in 1998, Ashley's local school districts provided her with supportive services, also known as "related services" under the IDEA, so that she can receive a proper education pursuant to an Individualized Education Plan ("IEP"). The related services included physical therapy, occupational therapy and transportation to and from school (the "Related Services").

The amended complaint alleges that Ashley's local school districts submitted claims to the DSS for Medicaid payments to cover the cost for some or all of the supportive services they furnished to Ashley. In turn, the DSS reimbursed the local school districts for those expenses. Subsequently, the DSS filed a lien on the proceeds of the judgment in the amount of $92,451.98 for reimbursement of the amount of money the DSS paid for the amount of care and assistance it furnished to Ashley.

The amended complaint acknowledges that DSS was entitled to a lien on the proceeds of the judgment to the extent that DSS seeks reimbursement for claims paid for Ashley's medical treatment for the injuries she sustained at birth and those incidental or collateral expenses, such as rehabilitative equipment and transportation related to her medical care and treatment. However, the amended complaint alleges that the DSS may not assert a lien for reimbursement of the "Related Services" provided to Ashley because these services are to be provided at no cost under the IDEA. Thus, by including those claims for reimbursement that were related to Ashley's IEP, DSS allegedly inflated its Medicaid lien on the Andree Judgment by not less than $5,038.93

## B. Facts Relating to Franklin Moronta

On June 12, 1992, Franklin was diagnosed with childhood lead poisoning as a result of exposure to lead in excess of regulatory limits in his apartment building (the "Building"). In or about January, 1996, Vargas, on behalf of her son Franklin, commenced an action in the Supreme Court of the State of New York, County of Nassau against the owners of the Building. In or about June, 2000, another action was filed in Supreme Court, Nassau County against an individual who purchased the Building during Franklin's occupancy. At all times when Franklin has been enrolled in school, he has been, and currently is, a "child with a disability" as defined in 20 U.S.C. § 1401(3).

Thereafter, similar to the facts alleged by Ashley, the DDS asserted liens on the proceeds from Vargas's actions, dated June 11, 2001 and June 28, 2001 in the amount of $56,634.04 representing the sum total of medical assistance furnished to Franklin. On November 6, 2002, an Infant Compromise Order (the "ICO") was en-

tered by the Supreme Court, Nassau County settling the action. As a result of the settlement, Franklin received a total of $235,000 as his share of the recovery. The ICO provided, *inter alia,* that $56,634.04 of the settlement funds, representing the amount of the lien asserted by DSS be deposited in an interest bearing account pending the determination of the lien.

The plaintiffs allege that the DSS wrongfully included claims for school-based and related services furnished to Franklin which were to be provided at no cost under the IDEA. These liens allegedly improperly inflated the amount of recovery to which DSS is entitled for Medicaid expenditures, thereby depriving Franklin of at least $22, 839 and a "free appropriate education."

The plaintiffs allege that had DSS not improperly inflated its asserted Medicaid lien, at least $22,839 of the amount set aside to provide for the DSS lien would have been available to Franklin. The complaint alleges that DSS refused to correct its statement of lien upon being notified by Franklin's attorneys.

On January 31, 2002, the plaintiff filed the instant action. On February 8, 2003, the complaint was dismissed pursuant to Rule 12(b)(6) with leave to amend. As stated above, the amended complaint asserts, among other things, violations of the IDEA, the Rehabilitation Act, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. As stated above, the amended complaint also seeks a declaratory judgment pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2001 stating that Nassau County's past and present policy of fixing, calculating and asserting Medicaid liens is unlawful and that the defendants may not assert any lien for monies paid through the Medicaid program for pre-school and school-based special education and related services provided pursuant to a disabled child's IEP.

With respect to claims arising under New York State Law, the amended complaint alleges violations of Article I, Sections 6 and 7 of the New York State Constitution, the New York State Education Law §§ 4402(2)(a) and 4410(2), and SSL § 367–a(2)(b).

The amended complaint also brings claims on behalf of a putative class of Nassau County residents who:

(i) have received or who presently receive special education or related services, (ii) had or now have claims or causes of action for damages for personal injury, (iii) have received or now are receiving medical assistance from the County of Nassau pursuant to its implementation of the Medicaid program and (iv) for whom the cost of such special education or related services has been paid or reimbursed by the County of Nassau to the local education districts, schools, institutions or public or private agencies which provided or are now providing such special education or related services.

The defendants now move under Rule 12(b)(6) to dismiss the claims under the IDEA, the Rehabilitation Act and the Equal Protection and Due Process Clause of the Fourteenth Amendment for failure to state a claim upon which relief can be granted.

## II. DISCUSSION

### A. Rule 12(b)(6)

A court may grant a Rule 12(b)(6) motion to dismiss for failure to state a claim only when " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.' " *Tarshis v. Riese Org.,* 211 F.3d 30, 35 (2d Cir.2000), *abrogated on other grounds, Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 122 S.Ct. 992, 152

L.Ed.2d 1 (2002), (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The court must accept as true all of the factual allegations set out in the complaint, draw inferences from those allegations in the light most favorable to the plaintiff, and construe the complaint liberally. *See id.* (citing *Desiderio v. National Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir.1999)).

In applying these principles, the court "must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Tarshis*, 211 F.3d at 39 (citing *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991)).

### B. Individuals with Disabilities Education Act

Congress passed the IDEA to ensure that children with disabilities receive "a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living. . . ." 20 U.S.C. § 1400(d)(1)(A). "Free appropriate public education" is defined as

> special education and related services that-
> (A) have been provided at public expense, under public supervision and direction, and *without charge;*
> (B) meet the standards of the State educational agency;
> (C) include an appropriate preschool, elementary, or secondary school education in the State involved; and
> (D) are provided in conformity with the individualized education program required under 1414(d) of this title.

20 U.S.C. § 1401(8) (emphasis added).

The plaintiffs contend that Franklin and Ashley were deprived of a "free appropriate education" because DSS placed a lien on money recovered by the plaintiffs in their respective personal injury actions in order to repay the DSS for expenditures for Related Services provided to Ashley and Franklin. The Court agrees.

▮ Under the IDEA, each state that receives federal education funds must prepare an Individualized Education Program (the "IEP") for each disabled child. *Hope v. Cortines*, 872 F.Supp. 14, 16 (E.D.N.Y. 1995) (citation omitted), *aff'd* 69 F.3d 687 (2d Cir.1995). "The IEP is the central mechanism by which public schools ensure that their disabled students receive a free appropriate public education." *Polera v. Bd. of Educ. of the Newburgh Enlarged City School Dist.*, 288 F.3d 478, 482 (2d Cir.2002). The IEP provides, among other things, the child's present performance level; goals and objectives; specific services that will permit the child to achieve those goals; and evaluation criteria and procedures to evaluate whether the child has met the goals outlined. 20 U.S.C. § 1414(d)(1)(A).

The plaintiffs allege that the DSS placed a lien on money recovered by the plaintiffs in their personal injury lawsuits in order to cover the cost of the "Related Services" provided to Ashley and Franklin. However, Related Services "are provided free of charge to all disabled students because of the [New York State] Legislature's determination that these services promote the educational needs of those eligible students." *Hannah v. NYC Housing Authority*, Index No. 17752196, at 4 (Sup.Ct. Kings County June 26, 2001) (Rappaport, J.). Justice Rappaport explained that the

> [DSS' contention that] the recovery of Medicaid provided for special education cannot be considered a deprivation of anyone's right to a free public education . . . is spurious since the recovery of such funds would decrease [the plain-

tiff's] settlement amount. If the court were to sustain the lien, [the plaintiff] would (in effect) be forced to pay for the cost of her special education, in contravention of State and Federal law, as evidenced by the fact that she would receive less money for the satisfaction of her lawsuit simply because she is in need of special education."

*Id.* at 5 (concluding that DSS is not entitled to be reimbursed for any sums paid to the Board of Education for the plaintiff's special education since such reimbursement would violate the plaintiff's right to a free appropriate education); *see also* New York State Educ. Law § 4401(2)(k) (A child with a disability is entitled to, among other things, special services or programs including "[s]pecial classes, transitional support services, resource rooms, direct and indirect consultant teacher services, transition services . . . assistive technology devices . . . travel training [and] home instruction . . ."); *McGaw v. Huntington Hosp.*, 89 A.D.2d 38, 44, 454 N.Y.S.2d 539 (2d Dept 1982) ("It is well established that the burden of providing such educational services falls, not upon the parents or other persons liable for the handicapped child's support, but upon the government, such charge being in the first instance upon the county.").

■ Accordingly, the Court finds that DSS's placement of a lien on settlement or personal injury awards received by a disabled student to pay for services that are mandated to be provided free of charge to such students is a violation of IDEA. *See Wise v. Ohio Dept. Of Educ.*, 863 F.Supp. 570, 574 (N.D.Ohio 1994) ("It is clear that IDEA does not permit a state which receives federal funding to charge the parents or guardians of resident disabled children for the cost of their education. While the IDEA does allow the state to use funds available from public or private agencies, and even insurance companies and other third party payors, these provisions cannot

be indirectly used to undermine this basic goal.")

■ The IDEA vests jurisdiction in district courts to review claims for violations of the statute only upon exhaustion of available state administrative review. *See* 20 U.S.C. § 1415(*l*); *Heldman v. Sobol*, 962 F.2d 148, 158 (2d Cir.1992); *see also BD v. DeBuono*, 130 F.Supp.2d 401, 426 (S.D.N.Y.2000) (citing *Hope v. Cortines*, 69 F.3d 687 (2d Cir.1995)). However, the Second Circuit has held that exhaustion is excused when: (1) it would be futile to use the due process procedures required by IDEA; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies, such as, for example, when a hearing officer lacks authority to grant the relief sought. *BD*, 130 F.Supp.2d at 426 (citing *Mrs. W. v. Tirozzi*, 832 F.2d 748 (2d Cir. 1987)).

The plaintiffs allege, among other things that:

It remains the formal or *de facto* policy of defendant Nassau to assert improper and inflated liens against the proceeds of personal injury claims and causes of action belonging to members of the plaintiff class, and to demand payment of the liens asserted by DDS, without deduction for Medicaid claims paid or reimbursed to school districts, other educational facilities, institutions and agencies for related services furnished pursuant to duly formulated I.E.P.'s.

Am Compl. ¶ 52. Thus, the asserted claims allege that the DSS has adopted a policy that is contrary to law. *See BD*, 130 F.Supp.2d at 426 (citation omitted). The amended complaint also alleges that the improper DSS liens cause "immediate and irreparable damage to the plaintiff's choses-in-action." Am. Compl. ¶ 85. These al-

legations fall within the exceptions to IDEA's exhaustion rule.

Accordingly, the defendants' motion to dismiss the cause of action arising under the IDEA is denied.

## C. The Rehabilitation Act

■■■■ The Rehabilitation Act protects disabled individuals from discrimination in public services. *See Weixel v. Bd. of Educ. of the City of New York,* 287 F.3d 138, 146 (2d Cir.2002). This act provides in pertinent part that "[n]o otherwise qualified individual with a disability ... shall, *solely by reason of her or his disability,* be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a) (emphasis added). In order to prove a violation of the Rehabilitation Act, a plaintiff must show that: (1) she is an individual with a disability; (2) she is otherwise qualified for benefits under a federally funded program; and (3) she has been denied those benefits *because of* her disability. *See Weixel,* 287 F.3d at 146–47 (emphasis added) (citing *Doe v. Pfrommer,* 148 F.3d 73, 82 (2d Cir.1998)).

Here, the plaintiffs contend that Ashley and Franklin faced "irrational discrimination against qualified disabled individuals, visited upon the plaintiffs *solely because of their status as successful tort litigants* ...." Am. Compl. ¶ 80. Thus, the plaintiffs fail to allege the third element of a Rehabilitation Act cause of action, namely that the reason that Ashley and Franklin were denied access to "free appropriate education" was because of their disability. *St. Johnsbury Academy v. D.H.,* 240 F.3d 163, 173 (2d Cir.2001) (emphasis added) ("The law requires only that an 'otherwise qualified individual with a disability' not be 'excluded from participation in a federally funded program *solely by reason of* his

disability." (quoting *Southeastern Community College v. Davis,* 442 U.S. 397, 405, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979))).

Accordingly, the defendants' motion to dismiss the Rehabilitation Act cause of action is granted.

## D. Equal Protection Claim

■■■■ The Fourteenth Amendment of the United States Constitution guarantees that no state "shall deny to any person within its jurisdiction the equal protection of the laws." This is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Celborne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (citation omitted). In order to establish an equal protection claim, the plaintiff must show that: (1) she was selectively treated compared with others similarly situated; and (2) the selective treatment was based on impermissible considerations, such as membership in a suspect class, intent to inhibit or punish the exercise of a constitutional right, or malicious or bad faith intent to injure. *Diesel v. Town of Lewisboro,* 232 F.3d 92, 103 (2d Cir.2000) (citation omitted); *Crowley v. Courville,* 76 F.3d 47, 52–53 (2d Cir.1996); *LaTrieste Restaurant & Cabaret v. Village of Port Chester,* 40 F.3d 587, 590 (2d Cir.1994).

■■■■ Where, as here, the alleged unequal treatment implicates neither a "fundamental right," *Turley v. Sauquoit Valley Sch. Dist.,* No. 01 Civ. 0515, 2003 WL 23325670, at *3 (N.D.N.Y. April 28, 2003) ("The Supreme Court has repeatedly held that the right to an education is neither explicitly nor implicitly guaranteed in the Constitution, and as such, cannot be considered 'fundamental'" (citing *San Antonio Independent Sch. Dist. v. Rodriguez,* 411 U.S. 1, 35–37, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973))), nor is based on a

suspect or quasi-suspect distinction such as race, religion, or alienage, the Court must apply a "rational basis review" to the statutory distinction. *Lamson v. Blumenthal,* 75 Fed.Appx. 811, 812, 2003 WL 22056244, at *1 (2d Cir.2003). Under a rational basis review, a classification " 'must be upheld if there is any reasonably conceivable state of facts that could provide a rational basis for classification.' " *Id.,* (quoting *Connolly v. McCall,* 254 F.3d 36, 42 (2d Cir.2001)). The burden is on the plaintiff to "negative 'any reasonably conceived state of facts that could provide a rational basis for the classification.' " *Board of Trustees v. Univ. of Ala. v. Garrett,* 531 U.S. 356, 367, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) (citation omitted).

In this case, the plaintiffs contend that there is no rational basis for distinguishing between a qualified "child with a disability" as defined under 20 U.S.C. § 1401(3) and a qualified "child with a disability" who is also a successful tort litigant with respect to providing a "free appropriate education." The plaintiff acknowledge that DSS is entitled to place a lien for public assistance on personal injury claims and suits against third parties to the extent that DSS seeks reimbursement for claims paid *for medical treatment* of children with disabilities. *See* Am. Compl. ¶¶ 3, 63 (emphasis added). However, the placement of a lien by the DSS on moneys insofar as it is for reimbursement for the costs of "Related Services," is contrary to the provisions of the IDEA which require that qualified children with disabilities receive a "free appropriate education." In the Court's view, targeting qualified children with disabilities who are also "successful tort litigants," may be irrational given the clear language of the IDEA and the fact that the Court can not conceive, nor have the defendants offered, any rationale for this alleged classification.

## E. Due Process Claims

### 1. Procedural Due Process

 The Supreme Court has directed that procedural due process claims be examined in two steps. A plaintiff must identify a liberty or property interest and demonstrate that the state has deprived it of that interest without due process of law. *See Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989) (citations omitted); *Ciambriello v. County of Nassau,* 292 F.3d 307, 313 (2d Cir.2002).

Here, the plaintiffs allege that they were deprived of "access to and the possession and use of monies recovered through the litigation of their respective personal injury causes of action. Those causes of action, and the funds collected upon their liquidation, are constitutionally protected property interests." Am. Compl. ¶ 82. The defendants argue that the plaintiffs do not have an "unfettered property interest" in these monies because "[p]ursuant to federal law, Medicaid recipients must assign to the state their rights to seek and collect payment for medical care...." Defs. Mem. p. 8 (citations omitted).

 Not only is it "well-settled that a final money judgment creates a 'vested right' and hence a constitutionally protected property interest," *Benjamin v. Jacobson,* 124 F.3d 162, 176 (2d Cir.1997), but the crux of this lawsuit is that DSS is placing a lien on moneys that are *not* for payment of medical, care but rather for related services that are provided to children with disabilities as part of their IEP. Accordingly, the plaintiff's entitlement to the proceeds of their respective personal injury actions alleges a cognizable property interest.

 The amended complaint alleges that under New York State Law, a public welfare official, such as Sherman, "shall

have a lien ... not exceeding ... the total amount of such assistance and care furnished by such public welfare official ..." Am. Compl. ¶ 19 (citing New York Soc. Sec. Law ("SSL") § 104–b(1)). Before the lien can be effective, written notice must be served on the injured party pursuant to SSL § 104–b(2). "Upon the service of the notice ... the local public welfare official shall file a true copy thereof in the office of the clerk of the county in which his office is located ... thereupon the lien ... shall attach to any verdict, decision, decree, judgment, award or final order in any suit, action or proceeding ..." Am. Compl. ¶ 21 (citing SSL § 104–b(3)). Thus, there is allegedly no warning or notice prior to the filing by the DSS.

Because the allegedly improper DSS liens cause "immediate and irreparable damage to the plaintiff's choses-in-action," Am. Compl. ¶ 85, the Court finds that the plaintiffs state a claim of a constitutional procedural due process violation. Accordingly, the motion to dismiss the procedural due process cause of action is denied.

### F. Substantive Due Process

■ To succeed on a substantive due process claim, a plaintiff "must show that the government action was arbitrary, conscience-shocking, or oppressive in a constitutional sense, and not merely incorrect or ill-advised." *Catanzaro v. Weiden,* 188 F.3d 56, 64 (2d Cir.1999) (citing *Kaluczky v. City of White Plains,* 57 F.3d 202, 211 (2d Cir.1995)) (internal quotations omitted). The amended complaint fails to allege that the defendants' "were anything worse than incorrect or ill-advised." *Id.* Accordingly, the defendants' motion to dismiss the substantive due process cause of action is granted.

### III. CONCLUSION

Based upon the foregoing, it is hereby

**ORDERED,** that the motion to dismiss the Rehabilitation Act and the Substantive Due Process causes of action is **GRANTED;** and it is further

**ORDERED,** that the motion to dismiss the Individuals with Disabilities Education Act, the Equal Protection and the Procedural Due Process causes of action is **DENIED;** and it is further

**ORDERED,** the parties are directed to contact United States Magistrate Judge E. Thomas Boyle forthwith to schedule the completion of discovery.

**SO ORDERED.**