[892 NYS2d 203]

Kristi Foote et al., Appellants, v Albany Medical Center Hospital et al., Respondents.

Third Department, December 3, 2009

APPEARANCES OF COUNSEL

*Powers & Santola, L.L.P.*, Albany (*Michael J. Hutter* of counsel), for appellants.

*Maynard, O'Connor, Smith & Catalinotto, L.L.P.*, Albany (*Robert A. Rausch* of counsel), for Albany Medical Center Hospital and others, respondents.

*Carter, Conboy, Case, Blackmore, Maloney & Laird, P.C.*, Albany (*Adam H. Cooper* of counsel), for William Baethlein, respondent.

*Brown & Tarantino, L.L.C.*, White Plains (*Katherine W. Dandy* of counsel), for Brian Evanczyk, M.D., Inc. and another, respondents.

*Petrone & Petrone, P.C.*, Buffalo (*Daniel S. Ratner of Heidell, Pittoni, Murphy & Back, L.L.P.*, New York City, of counsel), for Birth & Beyond Midwifery Practice of Oneonta, P.L.L.C. and another, respondents.

## OPINION OF THE COURT

Rose, J.P.

Plaintiffs' son, who was born in 2003, suffers from severe physical and behavioral disabilities associated with a rare brain abnormality known as Joubert syndrome. They commenced this medical malpractice action alleging that defendants negligently failed to detect their son's condition before his birth and that, if they had been informed of it early enough, they would have terminated the pregnancy. Defendants moved for summary judgment dismissing the action on the grounds that, among other things, plaintiffs have no legally cognizable injury because all medical and educational services needed by their son are being provided without cost to them under the Home and Community Based Services (hereinafter HCBS) waiver of Medicaid eligibility (*see* 42 USC § 1396n [c]) and the Individuals with Disabilities Education Act (20 USC § 1400 *et seq.* [hereinafter IDEA]). Supreme Court granted defendants' motions and dismissed the complaint, prompting this appeal by plaintiffs.

It is well settled that parents who successfully prosecute a "wrongful birth" medical malpractice action are entitled to damages to the extent that they can demonstrate an "increased financial obligation arising from the extraordinary medical treatment rendered [their] child during minority" (*Bani-Esraili*

*v Lerman*, 69 NY2d 807, 808 [1987]; *see Becker v Schwartz*, 46 NY2d 401, 412-413 [1978]). Here, plaintiffs' son clearly requires extraordinary medical and educational services due to his disabilities, and the sizable costs of providing those services are outlined in the life-care plan prepared by their expert, Joseph Carfi. Although most of those services are currently being paid for by government programs, we find merit in plaintiffs' argument that here, as with any tort action in which damages for economic losses are sought, the availability of another source of compensation does not obviate their injury. Rather, only upon a determination after trial that the source comes within the scope of the statutory collateral source rule will any award of damages be reduced (*see* CPLR 4545; *Oden v Chemung County Indus. Dev. Agency*, 87 NY2d 81, 85-86 [1995]).

Plaintiffs also assert that the medical benefits provided to their son as a result of the HCBS waiver create a lien that is expressly exempted from CPLR 4545 (a), but will have to be paid from their recovery (*see* Social Services Law §§ 104, 104-b; *Sizemore v Heavy Transp.*, 199 AD2d 969, 970 [1993]). This would be so because Medicaid is a payor of last resort (*see* 42 USC § 1396k [a] [1] [C]; § 1396a [a] [25] [H]; Social Services Law § 367-a [2] [b]; *Oxenhorn v Fleet Trust Co.*, 94 NY2d 110, 114 [1999]) and "[r]ecoupment from responsible third parties is necessary to ensure that the Medicaid program remain[s] ' "the payor of last resort" ' " (*Cricchio v Pennisi*, 90 NY2d 296, 305 [1997] [citation omitted]). Here, that public policy objective can be achieved only if plaintiffs' claim is allowed to proceed.

Similarly, IDEA purports to be a payor of last resort (*see* 20 USC § 1440 [a]). While the services provided under IDEA may not give rise to a lien (*see Andree ex rel. Andree v County of Nassau*, 311 F Supp 2d 325, 333 [ED NY 2004]), neither do they preclude plaintiffs' claim because the issues of whether and to what extent they constitute an offset are not determined until after trial (*see* CPLR 4545 [a]). Defendants then will have the burden to prove plaintiffs' entitlement to, and the extent of, any such collateral source with reasonable certainty (*see Young v Knickerbocker Arena*, 281 AD2d 761, 764 [2001]).

Further, Carfi's affirmation, report and life-care plan, which distinguish between the "basic floor" of services provided by public education and the level necessary to meet all of the son's needs, are sufficient to raise a question of fact as to whether the son will need services beyond those provided by government programs (*compare Mickens v LaSala*, 8 AD3d 453,

455 [2004], *lv denied* 4 NY3d 705 [2005], *with DePeigne v Medical Ctr. & Med. & Health Research Assn. of N.Y. City*, 251 AD2d 47, 47-48 [1998]). Thus, we cannot agree with defendants that plaintiffs have no legally cognizable injury. The existence of government programs such as HCBS and IDEA will not, as a matter of law, eliminate plaintiffs' financial obligation for their son's extraordinary medical and educational expenses (*see Mercado v Institute for Urban Family Health*, 39 AD3d 409, 409-410 [2007]; *Germosen v Gupta*, 237 AD2d 121 [1997]).

Accordingly, the order should be reversed and plaintiffs' cause of action reinstated. However, inasmuch as Supreme Court did not consider defendants' alternate argument that they are entitled to summary judgment because plaintiffs cannot prove a deviation from the standards of medical care, the matter will be remitted for determination of that potential basis for dismissal.

KANE, STEIN, McCARTHY and GARRY, JJ., concur.

Ordered that the order is reversed, on the law, with one bill of costs, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.